```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION
```

WILLIAM NOBLE RARE JEWELS,      §
a Texas general partnership,    §
by and through WILLIAM NOBLE,   §
INC., a general partner,        §
                                §
                                §
                 Plaintiff,     §
                                § Civil Action No. 3:05-CV-1607-D
VS.                             §
                                §
CHRISTIE'S INC. d/b/a           §
CHRISTIE'S FINE ART,            §
AUCTIONEERS, INC., et al.,      §
                                §
                 Defendants.    §

                      MEMORANDUM OPINION
                          AND ORDER

In this motion to dismiss under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) based on a mandatory contractual forum selection clause ("FSC"), the sole question presented is whether plaintiff's claims fall within the scope of the FSC. Concluding that they do, the court grants the motion and dismisses without prejudice plaintiff's action against the moving defendant.[1]

                              I

This is an action by plaintiff William Noble Rare Jewels ("Noble") against defendant Christie's Inc. d/b/a Christie's Fine Art Auctioneers, Inc. ("Christie's") and John Doe ("Doe") arising from the consignment sale of a sapphire and diamond ring ("Ring")

---

[1] Plaintiff's claim against the remaining defendant is based on a different contract that is not the subject of the FSC at issue. Accordingly, the court's decision does not affect plaintiff's suit against that defendant.

under the terms of a Consignment Agreement ("Agreement").  Noble filed suit in Texas state court, and Christie's removed the case to this court based on diversity of citizenship.  Noble sues Christie's for breach of fiduciary duty, and it seeks declaratory relief concerning Christie's fiduciary obligations to Noble.[2]  Noble sues Doe to recover for breach of the contract under which he agreed to purchase the Ring at auction.

According to Noble's state-court petition,[3] Christie's agreed to sell the Ring at auction.  Noble furnished Christie's an opinion as to the Ring's origin.  Before the sale, Christie's sought its own opinion from the American Gemological Laboratory ("AGL").  The opinions that Noble and Christie's obtained both stated that the origin of the Ring was Kashmir, which increased the value of the sapphire content of the Ring.  Christie's sold the Ring to Doe at a May 2005 auction.

Despite the sale and assurances from Christie's that payment

---

[2]In its state-court petition, Noble states that it "seeks a declaration of its rights, obligations, and/or status *under the Agreement*. . . ."  Pet. ¶ 24 (emphasis added).  If Noble is seeking declaratory relief concerning the Agreement, the claim clearly falls within the FSC.  Because in the preceding paragraph of the petition Noble appears to be relying more generally on Christie's "fiduciary obligations," the court will address that basis for Noble's claim for declaratory relief.

[3]To decide this motion, the court takes the allegations of Noble's petition as true and resolves any factual conflicts in the documentary submissions in Noble's favor as the plaintiff.  *See Aerus LLC v. Pro Team, Inc.*, 2005 WL 1131093, at *7-*8 (N.D. Tex. May 9, 2005) (Lynn, J.) (quoting *Smith v. Lucent Techs., Inc.*, 2004 U.S. Dist. LEXIS 4074, at *37 (E.D. La., Mar. 16, 2004)).

would be forthcoming, Noble has not received its part of the proceeds.  Christie's released the Ring to Doe without first advising Noble, obtaining its approval, or securing payment from Doe.  Christie's has represented to Noble that Doe took the Ring to several locations in Europe and purportedly obtained four opinions concerning the Ring's origin.  Two were purportedly inconclusive; the other two purportedly opined that the origin is Ceylon.  Sapphires originating from Ceylon are worth significantly less than those from Kashmir.  Christie's either does not have the opinions or refuses to disclose them to Noble.  On information and belief, Doe sought the questionable opinions to avoid his promise to purchase the Ring at auction.  Christie's maintains that Doe has relied on the opinions to rescind the sale, but it has declined Noble's requests to provide copies of the reports.  Christie's allegedly agreed, without Noble's consent, to rescind the sale.  Under the Conditions of Sale that Christie's follows, buyers such as Doe are obligated before they bid to satisfy themselves concerning the condition of property sold, and all property is sold "as is," without representation or warranty of any kind by Christie's or the seller.  A successful bidder accepts personal responsibility to pay the purchase price and all applicable charges.  Doe agreed to these terms and had the opportunity to inspect the Ring before the auction.  Christie's ignored the terms of its Conditions of Sale, thereby preventing the sale of the Ring

to Doe or any legitimate underbidders.

Acting contrary to its duties to Noble, Christie's insists that it will include the four opinions that Doe allegedly obtained in any subsequent offer of sale of the Ring.  Christie's is doing so despite Doe's clear motivation, the unknown reputation of the organizations that purportedly gave their opinions to Doe, the AGL's opinion, and the uncertainty whether the opinions Doe obtained were even based on an examination of the Ring.  Christie's apparently has readily accepted the questionable opinions that Doe obtained and has refused to acknowledge the opinion that Noble obtained, and the one that Christie's procured from AGL, that show Kashmir as the true origin of the sapphire.

Noble alleges, based on the foregoing factual allegations, that Christie's is liable for breaching its fiduciary duty to Noble.  It also seeks declaratory relief, contending that, pursuant to Christie's fiduciary obligations, it must reveal Doe's identity, tender copies of the opinions he purportedly obtained, and reject the opinions and sell the Ring with reference only to the opinion Christie's obtained from AGL and/or the one Noble obtained.

II

Christie's moves to dismiss Noble's lawsuit based on the Agreement's mandatory FSC.  The Agreement contains the following relevant provision:

> 10. OTHER MATTERS

                        *     *     *

>   (b). This Agreement shall be governed by and construed in accordance with the laws of the State of New York. *In the event of any dispute hereunder, (i) the parties hereby consent to the exclusive jurisdiction of the courts of the State of New York and the Federal courts of the United States of America located in the Southern District of New York and (ii) neither party shall be liable to the other for any special, consequential or incidental damages.*

                        *     *     *

D. App. 24 (emphasis added).

    Noble maintains that the FSC is narrow and inapplicable to its claims. It contends that it is suing Christie's for breaching its fiduciary duty by (1) refusing to reveal Doe's identity so that Noble can pursue claims against him, as Christie's has suggested, (2) by releasing the Ring to Doe, especially without payment or security, and (3) accepting the opinions that Doe obtained. Noble posits that it seeks declaratory relief that Christie's must (1) reveal Doe's identity, (2) tender to Noble all so-called opinions Doe obtained regarding the sapphire, and (3) disavow the questionable opinions that Doe obtained. Noble characterizes its claims as basically alleging that Christie's allowed Doe to damage Noble's property by seeking to discredit the origin of the sapphire and then, despite criticizing Doe's actions, purporting blindly to accept the opinions Doe says he obtained and ignoring the AGL opinion that Christie's secured pre-sale.

Noble posits on several grounds that its claims against Christie's fall outside the scope of the FSC. Among its various arguments, however, it concedes that the FSC applies if its claims pertain to matters of Christie's performance under the Agreement. Christie's maintains on several bases that the FSC applies to Noble's causes of action.

### III

### A

The court need not discuss at length the law of forum selection clauses. It is undisputed that the FSC is a mandatory provision, and Noble does not argue against enforcement on the basis that the clause is unenforceable, i.e., that the FSC is unreasonable under the circumstances. The single question presented is whether Noble's claims for breach of fiduciary duty and declaratory relief fall within the scope of the FSC.

Noble implicitly maintains,[4] and Christie's does not dispute in its reply brief,[5] that federal law governs the interpretation of

---

[4] Except for one citation to the definition of "hereunder" taken from a prior edition of Black's Law Dictionary, Noble cites only federal cases in support of its interpretation of the scope of the FSC. *See* P. Br. at 7-10.

[5] In its opening brief, Christie's clearly relied on federal law, *see* D. Br. at 6-11, although it explicitly did so in the context of enforceability, *see, e.g., id.* at 6 n.5, before it was aware that Noble's opposition would be based on the scope of the FSC. In fact, in its response brief, Noble challenges Christie's motion on the ground that it does not address the scope of the FSC. *See* P. Br. at 7.

the scope of the FSC. Accordingly, the court will assume not only that "[f]ederal law governs the determination of whether an enforceable forum selection clause exists[,]" *Aerus LLC v. Pro Team, Inc.*, 2005 WL 1131093, at *1 (N.D. Tex. May 9, 2005) (Lynn, J.) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)), but that federal law controls whether Noble's lawsuit falls within the scope of the FSC, *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000) ("In diversity cases, federal law governs the analysis of the effect and scope of forum selection clauses.").

B

"The court must examine the language of the contract to determine which causes of action are governed by the forum selection clause." *Aerus*, 2005 WL 1131093, at *7 (citing *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 222 (5th Cir.1998); *Soil Bldg. Sys. v. CMI Terex Corp.*, 2004 WL 1283966, at *5 (N.D. Tex. June 9, 2004) (Fish, C.J.)). "If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Id.* (citations, emphasis, and brackets omitted).

Other courts that have addressed contractual forum selection clauses that cover disputes or litigation that arises "hereunder" have held that they apply to relations that have arisen as a result of the contract. *See Picken v. Minuteman Press Int'l, Inc.*, 854 F.

Supp. 909, 911-12 (N.D. Ga. 1993)[6] ("Reading the word 'hereunder' to apply only to a pure breach of contract claim between the parties would be unduly crabbed and narrow. 'Hereunder" refers to the relations that have arisen as a result of this contract.").[7] Under this reasoning, Noble's claims—which arise from the contractual relations between Noble and Christie's—plainly fall within the scope of the FSC.

But the court need not rely on such reasoning alone to grant Christie's motion. This is because Noble concedes that claims that

---

[6]In *Picken* the FSC provided:

> THIS AGREEMENT SHALL BE GOVERNED AS TO VALIDITY, CONSTRUCTION AND IN ALL OTHER RESPECTS, BY THE LAWS OF THE STATE OF NEW YORK, AND *IN THE EVENT OF ANY LITIGATION COMMENCED BY EITHER PARTY HEREUNDER*, SUCH ACTION SHALL BE COMMENCED AND TRIED IN A COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK, OR IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, IN THE COUNTY WHERE LICENSOR HAS ITS HOME OFFICE. THE PARTIES WAIVE TRIAL BY JURY IN ALL INSTANCES.

*Picken*, 854 F. Supp. at 910 (bold font omitted; emphasis added).

[7]In *Aerus* the FSC was similar to a hereunder-type clause and provided:

> In the event either Party asserts a breach or default by the other *under the terms of this Agreement*, the jurisdiction, venue, and applicable law shall be the City of San Diego, California, United States of America, and this Agreement shall be deemed to have been signed at such location to the extent necessary for such jurisdiction and venue to apply.

*Aerus*, 2005 WL 1131093, at *3 (emphasis added; brackets omitted).

- 8 -

pertain to matters of contractual performance fall within a forum selection clause like the one at issue, i.e., that applies to "any dispute hereunder." The question thus becomes whether Noble is bringing such claims.

Noble's breach of fiduciary duty and declaratory relief claims unquestionably concern matters of Christie's performance under the Agreement. Grouped together, the two related causes of action[8] posit three categories of complaints: (1) Christie's is obligated, but has failed, to reveal Doe's identity; (2) Christie's improperly released the Ring to Doe, without payment or security; and (3) Christie's must tender to Noble the opinions that Doe allegedly obtained and must disavow them, and Christie's has breached its fiduciary duty by accepting the opinions. Regardless how Noble labels these claims, they equate to complaints about Christie's performance under its contract with Noble to auction the Ring. Noble asserts that Christie's breached its fiduciary duty by refusing to reveal Doe's identity, releasing the Ring to Doe, and accepting the opinions that Doe obtained. Apart from the Agreement, Christie's would not have auctioned the Ring or sold it to Doe, would not have opted to disclose or not to disclose Doe's identity, would not have released the Ring to him, and would not have become involved in the matter of obtaining opinions concerning

---

[8]As noted above, *see supra* note 2, despite some ambiguity in Noble's petition, its claim for declaratory relief appears to be based on Christie's fiduciary obligations.

- 9 -

the origin of the Ring's sapphire content.  Noble's claims exist because of Christie's alleged acts or omissions in performing under the Agreement.  In fact, under New York City law, Christie's could not have auctioned Noble's personal property except pursuant to a written agreement.  *See* D. Rep. Br. at 5-6 (quoting Rules of the City of New York).

Based on Christie's fiduciary obligations, Noble also seeks declaratory relief that Christie's must reveal Doe's identity, tender the opinions Doe obtained regarding the sapphire, and disavow the opinions.  Regardless of the label attached to this cause of action, Noble is challenging Christie's performance under the Agreement.

Moreover, as noted above, Noble characterizes its claims as basically alleging that Christie's allowed Doe to damage Noble's property, accepted the opinions Doe obtained, and ignored the AGL opinion that Christie's secured.  Noble alleges that Christie's ignored the terms of its Conditions of Sale, thereby preventing the sale of the Ring to Doe or any legitimate underbidders.  Noble also requests, as part of its claim for declaratory relief, that Christie's be required to sell the Ring with reference only to the opinion it obtained from AGL and/or the one Noble secured.  These are complaints and requests that concern Christie's performance of the Agreement.

Noble attempts to distinguish its claims from those that

- 10 -

relate to contractual performance by arguing that it is complaining of actions that are neither contemplated nor addressed by the Agreement.  Noble appears to reason that, if Christie's engaged in conduct that the Agreement did not allow it to undertake, such conduct by definition cannot concern performance of the Agreement.  The court disagrees.  The touchstone for determining whether Noble is complaining of Christie's performance is whether Noble is challenging an act or omission that Christie's took or failed to take in the course of invoking a right or executing an obligation specified in the contract.  Under the Agreement, Christie's retained, *inter alia*, the right to prescribe the conditions of the sale and to seek the views of experts after the sale.  *See* D. App. 24.  Thus in failing to reveal Doe's identity, releasing the Ring to him, and failing to disclose or disavow, and instead accepting, opinions concerning the Ring, Christie's has undertaken acts or omissions in the course at least of invoking rights provided it by the Agreement.[9]

---

[9]The court does not suggest that Christie's properly invoked such rights.  That question involves a merits determination to be made, if necessary, by the forum prescribed in the Agreement.

\*   \*   \*

For the reasons stated, Christie's August 19, 2005 motion to dismiss is granted, and Noble's suit against Christie's is dismissed without prejudice by judgment filed today.

**SO ORDERED.**

October 24, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE